UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHELLE M.,

                Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

20-CV-6356-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 15)

Plaintiff Michelle M.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 11) is denied and defendant's motion (Dkt. No. 13) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

**BACKGROUND**[2]

Plaintiff applied for DIB and SSI on November 29, 2016, alleging disability beginning December 27, 2012, due to depression, attention deficit hyperactivity disorder ("ADHD"), anxiety with panic attacks, spinal stenosis at L4-L5, spondylolisthesis of the lumbar region, pulmonary nodule, carpometacarpal synovitis, bilateral de Quervain's tendinosis, migraines, and esophageal nerve pain. (Tr. 86-98)[3] Her claim was denied at the initial level on February 1, 2017, and again after a *de novo* hearing before an Administrative Law Judge ("ALJ"). (Tr. 12-32, 33-60, 112-15, 132) The Appeals Council denied plaintiff's request for review on March 31, 2020. (Tr. 1-5) This timely action followed. (Dkt. No. 1)

**DISCUSSION**

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with the case.

[3] References to "Tr." are to the administrative record in this case. (Dkt. No. 9)

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first,

whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since November 25, 2014. (Tr. 18) At step two, the ALJ found that plaintiff had the severe impairments of knee tear, degenerative disc disease of the lumbar spine status post-surgery, degenerative joint disease, de Quervain's tenosynovitis, substance abuse, ADHD, and mood/situational disorder. (Tr. 18) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the Listings. (Tr. 18-20) Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b); 416.967(b)[4] except she could occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; she could occasionally stoop, kneel, balance, crouch and crawl; she must avoid concentrated exposure to hazards, including dangerous moving machinery, uneven terrain and unprotected heights; and she was limited to simple, routine, repetitive tasks of a low stress nature, meaning no high production quotas or fast paced assembly and can have superficial contact with the public. (Tr. 21)

---

[4] Light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id.*; Social Security Ruling ("SSR") 83-10, 1983 WL 31251 *5.

6

The ALJ then found at step four that plaintiff was unable to perform her past relevant work as a telephone sales representative, customer service representative, housekeeper, and data entry clerk. (Tr. 25) At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in the national economy which plaintiff could perform, including the representative jobs of collector, office worker/helper, and electronics worker. (Tr. 26) Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. (Tr. 26)

IV.   *Plaintiff's Challenges*

Plaintiff seeks remand of the Commissioner's decision because the ALJ failed to support her decision with substantial evidence, improperly evaluated the opinion evidence, and failed to properly develop the record. (Dkt. No. 11-1 at 24-35) For the following reasons, the Court disagrees.

**A.   The physical RFC is supported by substantial evidence.**

Plaintiff first contends that the ALJ failed to evaluate or weigh the opinion of consultative examiner Gilbert Jenouri, M.D. (Dkt. No. 11-1 at 26)

On January 21, 2017, plaintiff underwent a physical consultative examination by Dr. Jenouri. (Tr. 752-55) Plaintiff complained of low back pain along with right lower extremity pain, numbness and tingling and reported having a history of hypertension, diabetes, anxiety and depression. (Tr. 752) On examination, plaintiff's gait and stance were normal, she was unable to walk on heels and toes without difficulty, squat was to 30 percent, she needed no help changing for the examination or getting on and off the exam table, and was able to rise from a chair without difficulty. (Tr. 753) Plaintiff also had musculoskeletal limitations, normal neurological findings including full muscle strength in

all extremities, and full grip strength bilaterally. (Tr. 754) Dr. Jenouri diagnosed low back pain, right lower extremity paresthesia, hypertension, diabetes and history of anxiety and depression and opined that plaintiff had mild restrictions in walking and standing for long periods, bending, and stair climbing. (Tr. 754-55)

While the ALJ did not explicitly weigh this opinion, she did consider it as part of the RFC determination. (Tr. 22) Moreover, Dr. Jenouri's opinion is consistent with the RFC finding of light work with certain postural and environmental limitations. (Tr. 21) *See Lewis v. Colvin*, 548 Fed. Appx. 675, 677-78 (2d Cir. 2013) (RFC assessment for a significant range of light work was supported by an assessment from a consultative examiner of "mild limitations for prolonged sitting, standing, and walking," and direction that Lewis should avoid "heavy lifting, and carrying."); *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. Appx. 29, 34 (2d Cir. 2013) (affirming RFC for light work with occasional climbing balancing, stooping, kneeling, crouching, and crawling, where consulting examiner opined that plaintiff had a "mild to moderate limitation for sitting for a long time, standing for a long time, walking for a long distance, pushing, pulling, or heavy lifting."). Thus, any error caused by the ALJ's failure to fully discuss and evaluate Dr. Jenouri's opinion was harmless because there is no reasonable likelihood that an explicit consideration of the opinion would have changed her determination that the plaintiff was not disabled. *McKinstry v. Astrue*, 511 Fed. Appx. 110, 111-12 (2d Cir. Feb. 14, 2013) (summary order) (ALJ's failure to discuss the opinion of a physician assistant amounted to harmless error); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (harmless error where "no reasonable likelihood that [the ALJ's] consideration of the same doctor's 2002 report

would have changed the ALJ's determination that [the claimant] was not disabled during the closed period").

In a related argument, plaintiff contends that Dr. Jenouri's January 21, 2017, opinion was stale because it was issued prior to her back surgery later that year, and did not account for all of plaintiff's impairments, including de Quervain's tenosynovitis, carpal tunnel syndrome and neural foraminal stenosis. (Dkt. No. 11-1 at 26, 35)

"[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ['s] finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015) (quotation marks and citation omitted), *aff'd*, 652 Fed. Appx. 25 (2d Cir. 2016) (summary order). "However, the mere passage of time does not render an opinion stale, unless it fails to recognize evidence of deterioration of a claimant's condition." *Barbara, W. v. Comm'r of Soc. Sec.*, No. 19-CV-583, 2021 WL 248453, at *5 (W.D.N.Y. Jan. 26, 2021).

With respect to plaintiff's de Quervain's tenosynovitis, the ALJ observed that she underwent a series of cortisone injections to which plaintiff responded favorably. (Tr. 22) In February, 2018, plaintiff reported intermittent right hand numbness and tingling. Upon examination, she had a positive Tinel sign on the right and decreased sensation in the digits of her right hand, and a negative Finklestein's test with full range of motion bilaterally. (Tr. 22, 1721) In March, 2018, plaintiff's orthopedist noted that "the electrodiagnostics show just mild findings," and that she had obtained "meaningful relief with injections in the past." (Tr. 1678) The ALJ discussed these records and found, due to a lack of more severe findings on objective diagnostic tests and on examination, and plaintiff's ability to engage in activities of daily living such as performing household chores,

9

no further limitations were warranted.[5] (Tr. 23) The record therefore does not support a significant deterioration in plaintiff's upper extremity impairments.

As to plaintiff's lumbar pain, the ALJ noted that plaintiff underwent an L4-L5 laminectomy in May, 2017, and a follow-up examination one month later revealed no weakness in legs or feet and normal 5/5 muscle strength. (Tr. 22) On September 15, 2017, plaintiff told her surgeon, Dr. James Maxwell, that she had no pain in her back or legs and that "she is able to do everything pain free." (Tr. 1376) Dr. Maxwell noted that plaintiff "has had a great result to her L4-5 fusion" surgery and discharged her from his care. (*Id.*) Plaintiff herself testified that her back surgery "cured" the pain in her back, except for some arthritis, and she had no problem doing housework or other activities. (Tr. 21; 46-48)

Upon review of the medical and testimonial evidence after January, 2017, plaintiff's challenge to Dr. Jenouri's opinion as stale must be rejected. *See Cepeda v. Comm'r of Soc. Sec.*, No. 19-CV-4936, 2020 WL 6895256, at *10 (S.D.N.Y. Nov. 24, 2020) (rejecting staleness argument where evidence showed that plaintiff's condition had not deteriorated but apparently improved); *see also Andrews v. Berryhill*, No. 17-CV-6368, 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (ALJ did not err by relying on older opinions where there was no evidence of significant deterioration in the plaintiff's condition).

The Court next addresses plaintiff's challenges to the ALJ's mental RFC finding.

---

[5] As discussed earlier, the ALJ found that plaintiff's de Quervain's tenosynovitis was a severe impairment and limited plaintiff to the lifting/carrying limitations of light work with postural limitations and no climbing of ladders, ropes and scaffolds. (Tr. 21-23)

**B.     The mental RFC is supported by substantial evidence.**

The mental portion of the ALJ's RFC finding limited plaintiff to simple, routine, repetitive tasks of a low-stress nature, meaning no high production quotas or fast-paced assembly, and no more than superficial contact with the public. (Tr. 21) Plaintiff argues that this RFC finding is erroneous because the ALJ did not properly weigh the "disability-supporting opinions" of her treating psychologist, Dr. Tansy Deutsch, and was required to further develop the record with respect to Dr. Deutsch's treatment notes. (Dkt. No. 11-1 at 29-33)

Under the regulations applicable to plaintiff's applications, a treating source opinion can be given controlling weight, but only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is also "not inconsistent with the other substantial evidence" of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). If an opinion from a medical source is not entitled to controlling weight, as is the case here, the Commissioner will then determine what weight it should be given using the factors listed in paragraph (c) of 20 C.F.R. §§ 404.1527, 416.927. It is within the ALJ's discretion to resolve genuine conflicts in the evidence. *Veino*, 312 F.3d at 588; *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record"). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).

At the outset, the ALJ properly evaluated Dr. Deutsch's "totally disabled" opinion under the Commissioner's regulations and appropriately assigned it little weight. (Tr. 23-24; 553) *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ correctly observed that an

11

opinion of total disability is an opinion on an issue reserved to the Commissioner. (Tr. 24) *See* 20 C.F.R. §§ 404.1527(d), 4156.927(d). Such opinions are not medical opinions and are not entitled to any special significance. 20 C.F.R. §§ 404.1527(d)(3), 4156.927(d)(3).

The ALJ also correctly observed that Dr. Deutsch's "totally disabled" opinion was inconsistent with her own assessments that plaintiff had no more than moderate mental limitations in her ability to perform work-related activities. (Tr. 23-24) In so doing, the ALJ observed that plaintiff had been receiving consistent mental health treatment including therapy during the relevant period and that Dr. Deutsch was plaintiff's treating psychologist. (Tr. 23; 541-74) *See* 20 C.F.R. §§ 404.1527(c)(1), (2), 416.927(c)(1), (2) (when weighing a medical opinion, the source's examining relationship with the claimant and treatment relationship are considered). The ALJ also explained that Dr. Deustch's opinions were inconsistent with the record as a whole, including her own notes, which indicate that plaintiff had only mild-to-moderate limitations in her mental ability to perform work-related activities. (Tr. 23-24; 552, 556, 560-61, 564-65, 569-70) *See* 20 C.F.R. §§ 404.1527(c)(3), (4), 416.927(c)(3), (4) (when an ALJ does not assign controlling weight, factors such as the supportability and consistency of the opinion with the record as a whole, are considered to determine how much weight to assign to the opinion).

By way of example, in June and September 2013, Dr. Deutsch indicated that plaintiff's mental status examination results were "fully intact." (Tr. 23; 551-53, 555-57) On October 9, 2014, Dr. Deutsch noted that plaintiff had no more than moderate limitations in the ability to perform simple and complex tasks independently, maintain attention and concentration for rote tasks, and regularly attend to a routine and sustain a

schedule. (Tr. 558, 560) Significantly, Dr. Deutsch added that plaintiff showed no evidence of limitation in her ability to demonstrate the capacity to follow, understand and remember simple instructions and directions, maintain basic standard of hygiene and grooming, and perform low stress and simple tasks. (Tr. 560)

On May 11, 2015, Dr. Deutsch noted that plaintiff was well-dressed, had good eye contact, clear speech, logical thought process, calm demeanor, seemed goal oriented, used appropriate humor, had a fair mood, and intact memory, insight and motivation. (Tr. 23; 563-65) In the same assessment, Dr. Deutsch stated that plaintiff had normal functioning/no evidence of limitation in the ability to: understand and remember simple instructions and directions, perform simple and complex tasks independently, regularly attend to a routine and maintain a schedule, maintain basic standards of hygiene and grooming, and perform low stress and simple tasks. (Tr. 23; 564) On April 22, 2016, Dr. Deutsch noted that plaintiff's mental status evaluation revealed she was fully oriented, logical, goal-directed and articulate. (Tr. 568-70)

In sum, Dr. Deutsch's mental status evaluation findings and assessment of no more than moderate mental limitations were not consistent with her opinion that plaintiff was "totally disabled." (Tr. 23-24) Accordingly, the ALJ provided good reasons for giving little weight Dr. Deutsch's opinion of total disability.

In contrast to Dr. Deutsch's opinion of total disability, the ALJ afforded "good" weight to the opinions of treating nurse practitioner (NP) Joanne McMaster as they were "mostly consistent with the evidence of record." (Tr. 24) On December 12, 2016, the NP opined that despite plaintiff's mental health diagnoses, she had no limitation in understanding and memory, and a limited ability to maintain sustained concentration and

persistence and socially interact. (Tr. 23; 655-56) Four months later, NP McMaster opined that plaintiff had normal functioning/no evidence of limitation in her ability to follow, understand and remember simple instructions and directions; perform simple and complex tasks independently; maintain attention and concentration for rote tasks; maintain basic standards of hygiene and grooming; and, perform low-stress and simple tasks. (Tr. 23-24; 1628-29)

Likewise, the mental RFC finding is supported by the January 21, 2017, report and opinion of consultative psychologist Dr. Christine Ransom. (Tr. 23-24; 747-50) During the evaluation, plaintiff reported that her ADHD, depression and anxiety were in good remission on medication and that she was using coping strategies to manage her obsessive compulsive disorder ("OCD"). On mental status examination, Dr. Ransom observed that plaintiff was cooperative, oriented, well-groomed, and had fluent speech and good eye contact. Attention, concentration and thought processes were intact, and insight and judgment were good. Dr. Ransom diagnosed ADHD, in remission on medication; OCD, mild; major depressive disorder, in remission on medication; unspecified anxiety disorder, in remission on medication; and, marijuana dependence. Dr. Ransom opined that plaintiff showed no difficulty in following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration for simple tasks, maintaining a simple regular schedule and learning simple new tasks, performing complex tasks, relating adequately with others and appropriately dealing with stress. (Tr. 23-24; 747-50)

These opinions are generally consistent with the RFC finding and the ability to perform the basic mental aspects of unskilled work. (Tr. 21) *See* 20 C.F.R. §§

404.1521(b)(3)-(6), 416.921(b)(3)-(6) (the basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers, and usual work situations; and, to deal with changes in a routine work setting).

Plaintiff's argument that the ALJ had a duty to further develop the record must be also be rejected. (Dkt. No. 11-1 at 33-35) *See* 20 C.F.R. § 404.1520b(b)(1) ("If any of the evidence in your case record, including any medical opinions, is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have"). "The ALJ is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability." *Janes v. Berryhill*, 710 Fed. Appx. 33, 34 (2d Cir. 2018) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)) (internal citations omitted); *see Abbott v. Colvin*, 596 Fed. Appx. 21 (2d Cir. 2015) (ALJ did not err in failing to seek additional information from a treating source because there were no obvious gaps in the record); *Lowry v. Astrue*, 474 Fed. Appx. 801, 804 (2d Cir. 2012) (ALJ was not required to re-contact treating source for a medical source statement because the record contained complete medical history). Here, the ALJ had a record spanning nearly 2,000 pages, which included Dr. Deutsch's opinions, functional assessments, and examination findings; NP McMaster's notes and opinions; and Dr. Ransom's report and opinion. Accordingly, the ALJ had sufficient information upon which to determine plaintiff's mental RFC.

The Court has considered plaintiff's remaining arguments and concludes they are without merit.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   June 8, 2021
         Buffalo, New York

*[signature]*
MICHAEL J. ROEMER
United States Magistrate Judge